Affirmed and Memorandum Opinion
filed October 26, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00325-CV



Kenneth I.
Parker, Appellant 

v.

Robert Ryan
Realtors, Inc., Appellee 



On Appeal from
the 269th District Court

Harris County, Texas

Trial Court
Cause No. 2009-31369



 

M E M O R A N D U M   O P I N I O N


In this interlocutory appeal from the trial court’s
denial of his special appearance, appellant Kenneth I. Parker claims that his
contacts with Texas are insufficient to support personal jurisdiction.  Finding
no error in the trial court’s interlocutory order, we affirm.  

I.  BACKGROUND

The underlying suit involves Houston property (the
“Property”) owned by several individuals, some of whom are related.  Appellant
and his sister, both Missouri residents, maintain individual ownership interests
in the Property.  In 2006, the siblings traveled to Texas to sell the Property. 
They were unsuccessful in their effort to sell the Property because of various
clouds on the title.  Thereafter, appellee Robert Ryan Realtors, Inc. (“Ryan
Realtors”) became involved in the sale of the Property.  The parties dispute the
way in which Ryan Realtors became involved and the scale of the company’s
involvement:  Ryan Realtors contends that appellant and his sister employed the
company to (1) clear title to the Property and (2) broker the sale of the Property.
 Appellant contends that he, personally, did not employ Ryan Realtors, although
his sister contended that she hired the company to assist in the sale of the Property.

Ryan Realtors claims that it executed a listing
agreement, by mail, with appellant and his sister in November 2006.  Under this
agreement, Ryan Realtors had the exclusive right to list and sell the Property;
the agreement also gave Ryan Realtors a brokerage fee, 6% of the sales price. 
Ryan Realtors then approached other owners holding an interest in the Property and
attempted to acquire their interests.  Ryan Realtors further claims that it
executed an earnest money contract with appellant and his sister, offering to sell
the Property to a prospective buyer in March 2007.  The earnest money contract
was executed by electronic and regular mail.  In April 2007, appellant executed
an affidavit of heirship to clear the title for sale.  Despite these efforts,
the Property was not sold.  

In 2009, appellant’s sister filed suit against Ryan
Realtors and Robert Cornelius Ryan, individually and in his capacity as a Texas
real estate broker.  She alleged fraud, Deceptive Trade Practices-Consumer
Protection Act (“DTPA”) violations, and breach of fiduciary duty.  Ryan
Realtors filed a counterclaim against the sister and appellant, asserting various
fraud and breach of contract claims on the exclusive listing agreement. 
Appellant filed a special appearance, contending that (1) he was not a Texas
resident, (2) he had never conducted business in Texas, and (3) Ryan
Realtors had failed to plead any facts subjecting appellant to the jurisdiction
of a Texas court.  Appellant also filed an answer, subject to his special
appearance; both pleadings were filed on March 9, 2010.  Appellant set the
special appearance for hearing three days later, on March 12, 2010.

Ryan Realtors contested appellant’s special
appearance, claiming that appellant had “purposefully availed himself of the
privilege of conducting activities in Texas” by (1) engaging Ryan Realtors to
sell the Property, (2) executing a listing agreement granting Ryan Realtors the
exclusive right to list and sell the Property, (3) executing a sales contract,
and (4) attempting to sell Texas Property.  Ryan Realtors attached affidavits
and exhibits to support its jurisdictional facts; however, the exhibits were
not incorporated into the response by reference.  

On March 12, 2010, the trial court reset the hearing
on the special appearance, citing inadequate notice to Ryan Realtors. 
Appellant amended his special appearance six days later with similar arguments
but with additional facts in his affidavit.  Ryan Realtors responded to the
amended special appearance, also making arguments similar to those in its
original response.  Ryan Realtors attached Exhibit 9, an affidavit with eight
incorporated exhibits, which was explicitly incorporated into the response by
reference.  The trial heard the special appearance thereafter and denied it. 
Appellant now appeals the trial court’s ruling.  In two issues, appellant
contends that:  (1) the trial court erroneously ruled on his original special
appearance, not the amended pleading; (2) the trial court erroneously
considered Ryan Realtors’ Exhibit 9; and (3) the evidence is legally and factually
insufficient to support the trial court’s ruling.   

II.  RULING ON LIVE PLEADING

In appellant’s first issue, he
argues that the trial court erroneously ruled on his original special appearance
and not his amended special appearance, the live pleading at the time of the
second hearing.  The record, however, does not support appellant’s argument. 
Appellant filed his original special appearance on March 9, 2010 and set the
hearing for March 12, 2010.  The trial court reset the hearing because
appellant had not provided adequate notice to Ryan Realtors.  On March 18,
2010, appellant filed an amended special appearance, making substantially similar
arguments to those raised in the original special appearance and supplementing
his original affidavit with jurisdictional facts.  The trial court eventually
heard argument on the pleading on March 26, 2010; the docket sheet for the
hearing date reflects: 

Hearing on Third-Party Defendant’s Amended
Special Appearance: Farris appeared for Third-Party Plaintiff.  Boze appeared
for Third-Party Defendant.  Issue is minimum contacts under specific
jurisdiction.  Court to rule promptly.  

The trial court clearly identified
the amended special appearance as the pleading upon which it ruled.  Furthermore,
the trial court indicated in its order that it had “consider[ed] . . .
[appellant’s] special appearance, the pleadings, the affidavits, and arguments
of counsel.”  Thus, the order suggests that the trial court considered the
amended special appearance—a pleading on file at the time the order was
signed.  See Retzlaff v. Tex. Dep’t of Criminal Justice, 135 S.W.3d 731,
737–38 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (interpreting trial
court’s statement that it had considered “the argument and pleadings of the
parties filed herein” to mean the trial court had considered all pleadings
filed prior to the date of the judgment).  We conclude that the trial court
considered and ruled on appellant’s amended special appearance.  Accordingly, his
argument is without merit.  We overrule appellant’s first issue to the extent
that he erroneously asserts the trial court’s failure to rule on the live
pleading.  

III.  ADMISSIBILITY OF EXHIBIT 9: INCORPORATION BY
REFERENCE

Appellant also argues in his first issue
that the trial court erroneously considered Exhibit 9 attached to Ryan
Realtors’ response to the amended special appearance.  Specifically, appellant
argues that because Ryan Realtors did not properly incorporate Exhibit 9 into
its response, it is not competent evidence.  While appellant is correct that a
party must incorporate an exhibit by reference to place the exhibit before the
court as evidence,[1]
the record reveals that Ryan Realtors properly incorporated Exhibit 9 by
reference into its response to appellant’s amended special appearance. 

Exhibit 9, the affidavit of Robert
C. Ryan, was attached to Ryan Realtors’ response to appellant’s amended special
appearance.  The affidavit incorporated eight exhibits, Exhibits 1 through 8,
into Ryan’s affidavit by reference.  Furthermore, Ryan Realtors’ response
incorporated Exhibit 9 into the pleading by reference.  Accordingly, the affidavit
and its incorporated exhibits were properly incorporated into Ryan Realtors’
response to the amended special appearance and were properly before the court
as evidence.  We overrule appellant’s first issue in its entirety.

IV.  PERSONAL JURISDICTION

In appellant’s second issue, he
contends that the evidence is legally and factually insufficient to sustain the
trial court’s personal jurisdiction ruling.  We disagree.

A.  Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo.  Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).  In a challenge to
personal jurisdiction, a plaintiff and defendant bear shifting burdens of
proof.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789,
793 (Tex. 2002).  The plaintiff bears the initial burden to plead sufficient
allegations to bring a nonresident defendant within the reach of the Texas
long-arm statute.  Id.; Am. Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 807 (Tex. 2002).  If the plaintiff pleads sufficient
jurisdictional allegations, the nonresident defendant then assumes the burden
of negating all bases of jurisdiction in those allegations.  Moki Mac,
221 S.W.3d at 574; Marchand, 83 S.W.3d at 793.  However, if the
plaintiff does not plead sufficient jurisdictional facts, the defendant meets
his burden to negate jurisdiction by proving he is not a Texas resident.  Furthermore,
the plaintiff’s pleadings are not dispositive of the jurisdictional dispute;
thus, both parties can present evidence either proving or disproving the
allegations.  Kelly v. Gen. Interior Constr., Inc., 301 S.W.3d 653, 659
(Tex. 2010).  

When, as here, the trial court does not issue
findings of fact and conclusions of law with its special appearance ruling, all
facts necessary to uphold the ruling and supported by the evidence are
implied.  Marchand, 83 S.W.3d at 795.  However, these implied findings
are not conclusive and may be challenged for legal and factual sufficiency when
this court has a complete record—the reporter’s and clerk’s—on appeal.  Id.;
see also Cerbone v. Farb, 225 S.W.3d 764, 767 (Tex. App.—Houston [14th
Dist.] 2007, no pet.).  Although the trial court in this case held a hearing on
appellant’s special appearance and considered the pleadings, evidence filed
with the district clerk, and arguments of counsel, there is no reporter’s
record.  Therefore, we will presume that the special appearance hearing was non-evidentiary
and that the trial court considered only the evidence filed with the district clerk. 
See Michiana Easy Livin’ Country, Inc., v. Holten, 168 S.W.3d 777, 784
(Tex. 2005); Info. Servs. Group, Inc. v. Rawlinson, 302 S.W.3d 392, 397
n.3 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

B.  Personal Jurisdiction

A Texas court may exercise personal jurisdiction over
a nonresident defendant if (1) the defendant has minimum contacts with Texas,
and (2) the exercise of jurisdiction comports with traditional notions of fair
play and substantial justice.  Marchand, 83 S.W.3d at 795.  Minimum
contacts are sufficient for personal jurisdiction when the nonresident
defendant purposefully avails himself of the privilege of conducting activities
within the forum State, thus invoking the benefits and protections of its laws. 
Moki Mac, 221 S.W.3d at 575.  There must be either minimum contacts
sufficient to confer specific jurisdiction or continuous and systematic
contacts sufficient to confer general jurisdiction.  Coleman, 83 S.W.3d
at 806–07.

When specific jurisdiction is asserted, as in this
case, the following requirements must be met: (1) the defendant’s contacts must
be purposeful; and (2) the cause of action must arise from or relate to those
contacts.  Id. at 806.  In analyzing specific jurisdiction, we must
focus on the relationship among the defendant, the state of Texas, and the
cause of action.  See Guardian Royal Exch. Assur., Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991); see also Barnhill
v. Automated Shrimp Corp., 222 S.W.3d 756, 762 (Tex. App.—Waco 2007, no
pet.).  The contacts relied upon must be purposeful, rather than random,
fortuitous, or attenuated, and the defendant must seek some benefit, advantage,
or profit by availing himself of the jurisdiction.  See Moki Mac, 221
S.W.3d at 575.  Furthermore, foreseeability is an important consideration,
although not determinative, in deciding whether the nonresident defendant has
purposefully established “minimum contacts” with the forum.  Marchand,
83 S.W.3d at 795; Huynh v. Nguyen, 180 S.W.3d 608, 616 (Tex.
App.—Houston [14th Dist.] 2005, no pet.).  

C.  Appellant’s Contacts with Texas

The record reflects that appellant made the following
purposeful contacts with Texas:  (1) traveled to Texas in 2006 to sell the Property
and (2) executed a listing agreement, earnest money contract, and affidavit of
heirship, all of which were mailed to Texas in an effort to sell the Property. 
In 2006, appellant and his sister traveled to Texas to sell the Property. 
However, Ryan Realtors was not involved in the sale of the Property at that
time, and this contact did not form the basis of Ryan Realtors’ fraud or breach
of contract counterclaim in the underlying suit.  Accordingly, this contact
weighs against personal jurisdiction.

Regarding the listing agreement, although it is not
part of our record, the affidavits of Robert Ryan and attorney Jeffrey Dorrell
reflect the following:  the listing agreement was sent to appellant from Texas to
Missouri.  In Missouri, appellant signed the agreement, as a seller, and the
document was mailed back to Ryan Realtors in Texas.  As the seller in the listing
agreement, appellant employed Ryan Realtors—exclusively—to list and sell the Property. 
For this service, the listing agreement required appellant (and his co-seller)
to pay a brokerage fee, 6% of the sales price, to Ryan Realtors.  This fee was
to be paid to Ryan Realtors in Harris County, Texas.  Furthermore, the
agreement specifically stated that the contract was enforceable in Texas.

Additionally, the listing agreement forms the basis
of Ryan Realtors’ counterclaim:  the company claims that appellant committed
fraud by misrepresenting his “fee simple” ownership in the property and
breached the listing agreement by failing to pay the brokerage fee. 
Accordingly, appellant’s contacts with Texas surrounding the listing agreement
are both purposeful and form the basis of Ryan Realtors’ causes of action.  Furthermore,
appellant made other contacts with Texas that are related to Ryan Realtors’
counterclaims.  Appellant executed an earnest money contract with Ryan Realtors
to sell the Property.  The earnest money contract was returned to Ryan Realtors
in Texas and provided that the company was entitled to a brokerage fee.  Appellant
executed an affidavit of heirship, styled in Harris County, Texas, in his
efforts to sell the Property.  

Moreover, there is sufficient evidence that
appellant’s sister acted as his agent in the sale of his interest in the Property
and dealings with Ryan Realtors.  And in a principal-agent relationship, the
contacts of the agent may be imputed to the principal for the purposes of
personal jurisdiction.  Greenfield Energy, Inc. v. Duprey, 252 S.W.3d
721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.); see also Coleman v.
Klockner & Co. AG, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.]
2005, no pet.).  Appellant’s sister apparently took the lead in selling both
her and appellant’s interest in the Property after employing Ryan Realtors. 
Emails between Ryan Realtors and appellant’s sister reflect that she was the
contact person for appellant regarding the sale of the Property, as appellant
was “hard to contact sometimes.”  In these emails, the sister also discusses
having conferred with appellant concerning the sales price and having him sign
documents to sell the Property.  Appellant even signed an email acknowledging
his approval of a sales contract.[2] 
Because there is sufficient evidence of his sister acting as appellant’s agent
regarding the sale of the Property, and those acts are substantially connected
to the operative facts in the underlying litigation, the sister’s contacts with
Texas can be imputed to appellant for purposes of finding personal
jurisdiction.  See Duprey, 252 S.W.3d at 733; Coleman, 180
S.W.3d at 588. Based on the foregoing contacts, we conclude that sufficient
minimum contacts exist between appellant and the forum state.

D.  Traditional Notions of Fair Play and Substantial Justice

Likewise, finding specific jurisdiction over
appellant comports with fair play and substantial justice.  We consider (1) the
burden on the nonresident defendant; (2) the forum state’s interest in
adjudicating the dispute; (3) the plaintiff’s interest in obtaining convenient
and effective relief; (4) the most efficient resolution of controversies; and
(5) the shared interest of the several states of furthering substantive social
policies.  Pulmosan Safety Equip. Crop. v. Lamb, 273 S.W.3d 829, 841–42
(Tex. App.—Houston [14th Dist.] 2008, pet. denied).  Only the rare case will
fail the fair-play analysis after it has been determined that minimum contacts
exist.  Id. at 842.

Appellant contends that this facet of our personal
jurisdiction analysis weighs in his favor because he is in “ill-health,” “in
his declining years,” and does “not want to travel to Houston, Texas to
litigate this matter.”  Appellant also contends that Ryan Realtors can collect
any damages it is entitled to, if successful, solely from his sister.  Besides the
blanket statement that he is in “ill health” and in “his declining years,” appellant
makes no showing that such conditions render him incapable of traveling to
Texas.  Appellant fails to detail why his age or health would make it a burden
or unreasonable to travel to Houston.  Appellant simply has not demonstrated
any burden of litigating in Texas.

On the other hand, the original suit was filed by his
sister in Texas; the affected parties are already litigating in Texas in a
related suit.  The original suit and counterclaim arise out of a transaction
involving real estate located in Texas—Texas obviously has an interest in
resolving controversies concerning property in its territory.  We conclude that
the exercise of personal jurisdiction over appellant would not offend traditional
notions of fair play and substantial justice and overrule appellant’s second
issue.

We affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Yates and Sullivan.

 









[1]
See Rangel v. Lapin, 177 S.W.3d 17, 21 (Tex. App.—Houston [1st Dist.]
2005, pet. denied) (acknowledging that exhibits are properly before the court
as evidence when referred to or incorporated into the motion); cf. Speck v.
First Evangelical Lutheran Church of Houston, 235 S.W.3d 811, 816 (Tex.
App.—Houston [1st Dist.] 2007, no pet.) (“[Appellant] did not  . . .
incorporate the affidavits by reference.  The affidavits attached to
[appellant’s] pleading are therefore not . . . evidence.”).





[2]
Furthermore, although appellant claims that he never communicated directly with
Ryan Realtors, his signature is indisputably on the earnest money contract and
a printout of one of Ryan Realtors’ emails to his sister.  Other evidence
reflects that appellant executed an exclusive listing agreement with Ryan
Realtors.  If appellant did not directly communicate with Ryan Realtors,
presumably a third-party agent acted on his behalf in the execution of these
documents and his signing the email approving the sales contract.